UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES O. BRADLEY TRUST, *et al.*,<br><br>           Plaintiffs,<br><br>    v.<br><br>ZENITH CAPITAL LLC, *et al.*,<br><br>           Defendants.<br>_____/ | No. C-04-2239 JSW (EMC)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION TO OBTAIN DISCOVERY OF FINANCES OF DEFENDANTS**<br>**(Docket Nos. 47, 53)** |

Having considered the parties' briefs and accompanying submissions as well as the oral argument of counsel, and good cause appearing therefor the Court hereby GRANTS that portion of Plaintiffs' motion seeking to compel net worth discovery from all Defendants. The Court also provides in this order guidance to the parties regarding the remaining discovery disputes.

### I.   FACTUAL & PROCEDURAL BACKGROUND

In this motion to compel, Plaintiffs seek discovery from the following Defendants: (1) the entities Zenith Capital LLC; Tasker Cooper Smith/Zenith Group Ltd.; Tasker Cooper Smith/Zenith Group LLC; and Pisenti & Brinker LLP, and (2) the individuals Rick Lane Tasker, Martel Jed Cooper, Gregg Smith, and Irwin S. Rothenberg. Essentially, Plaintiffs are seeking discovery from Zenith Capital LLC, all of its predecessor entities, and the individuals or entities who were, are, or might have been managing members of or in positions of control over Zenith Capital LLC.

In their complaint, Plaintiffs allege that Defendants -- acting as Plaintiffs' investment advisors -- invested their money in a hedge fund, Global Money Management L.P. ("GMM") from 1998 through 2003. Plaintiffs claim, *inter alia*, that Defendants fraudulently misrepresented GMM's

assets and returns, received "secret kickbacks" from GMM, and failed to tell Plaintiffs that an operator of GMM had been disciplined by the National Association of Securities Dealers ("NASD"). According to Plaintiffs, because of Defendants' actions, they lost $16,200,000 in principal investments. Plaintiffs have filed suit against Defendants for violations of the following: (1) the Federal Securities Act, 15 U.S.C. § 77(q)(a); (2) the Exchange Act, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5; (3) the Advisers Act, 15 U.S.C. § 80b-6(1) & (2); (4) the Civil Rico Act, 18 U.S.C. § 1962; (5) the California Unfair Business Practices Act, Cal. Bus. Prof. Code § 17200; (6) the California Corporations Code, §§ 25503, 27101; and (7) the common law (more specifically, constructive fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and breach of contract).

Plaintiffs now move to compel discovery of Defendants' finances, arguing that the information is relevant to (1) punitive damages (state law), (2) control person status (federal law), and (3) alter ego status (state law).

## II. DISCUSSION

A. Punitive Damages

Defendants do not dispute that punitive damages are available to Plaintiffs pursuant to their state law claims. Moreover, Defendants do not dispute that information as to net worth and financial condition is generally relevant to the issue of punitive damages (at least current net worth and financial condition). *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded . . . ."). Instead, Defendants argue that the discovery should not proceed because (1) information on their net worth and financial condition is privileged and (2) punitive damages discovery should be delayed. Defendants Pisenti & Brinker and Mr. Rothenberg also make an independent argument which is addressed below.

1. Privilege

According to Defendants, information on their net worth and financial condition is privileged as a matter of privacy under Article I, Section I of the California Constitution. However, federal law on privilege, and not state, applies to the instant case. *See Religious Tech. Ctr. v. Wollersheim*, 971

2

1  F.2d 364, 367 n.10 (9th Cir. 1992) (holding that federal privilege law applies in a case involving
2  both federal and pendent state claims); *see also Hancock v. Hobbs*, 967 F.2d 462 (11th Cir. 1962)
3  (applying federal rule of privilege to both federal and state claims, on the ground that federal rules
4  control federal claims and "it would be impractical to apply two different rules of privilege to the
5  same evidence before a single jury").

6  Under federal law, Defendants do have a constitutional right to privacy – more specifically, a
7  constitutional right to nondisclosure of their personal information. *See Whalen v. Roe*, 429 U.S. 589,
8  599 (1977); *Nixon v. Adm'r of Gen. Serv.*, 433 U.S. 425, 457 (1977). However, that right is not
9  absolute. *See Crawford v. United States Trustee*, 194 F.3d 954, 959 (9th Cir. 1999). Courts that
10 have considered whether a disclosure of financial information might violate a constitutional right to
11 privacy have employed a balancing test to determine whether there has been a violation. *See, e.g.*,
12 *Denius v. Dunlap*, 209 F.3d 944, 958 (7th Cir. 2002); *Am. Fed'n of Gov't Employees, AFL-CIO v.*
13 *Dep't of HUD*, 118 F.3d 786, 793 (D.C. Cir. 1997); *Barry v. City of New York*, 712 F.2d 1554, 1559-
14 62 (2d Cir. 1983); *Plante v. Gonzales*, 575 F.2d 1119, 1136 (5th Cir. 1978).

15 Following those courts and applying a balancing test, the Court concludes that information
16 on Defendants' net worth and financial condition should be disclosed because the interests favoring
17 disclosure (*e.g.*, ascertaining the truth, addressing potentially severe wrongdoing by Defendants,
18 ensuring enforcement of rights) outweigh the interests favoring nondisclosure, especially since the
19 information on net worth and financial condition is sought only from 2004 to the present, *see* Pls.'
20 Mot. at 1-2, and Defendants' interests in maintaining their privacy can be protected through a
21 protective order. *Cf. Borzillieri v. Am. Nat'l Red Cross*, 139 F.R.D. 284, 288 (W.D.N.Y. 1991)
22 (noting that "properly framed protective order will permit plaintiff to question donor X without at
23 the same time violating his or her constitutional right to privacy"); *Whalen*, 429 U.S. at 607
24 (Brennan, J., concurrence) (suggesting that widespread dissemination of medical information to
25 public might constitute a constitutional violation but not limited disclosure to small number of
26 public health officials with legitimate interest in information). Accordingly, this Court will order the
27 production of these documents under a strict protective order, *e.g.*, limiting disclosure to counsel
28

only (*i.e.*, no dissemination to Plaintiffs-clients, let alone the public unless and until ordered otherwise) and requiring destruction of all information (including copies) at the end of litigation.[1]

2.  Delay

Defendants argue that, even if their financial information is not privileged, it should not be produced until Plaintiffs have made out a prima facie case on the issue of punitive damages. While some federal courts have required a prima facie showing, the majority have not. *See* 6-26 Moore's Fed. Practice – Civ. § 26.41 (taking note of position of majority of federal courts); *see also United States v. Matusoff Rental Co.*, 204 F.RD. 396, 399 (S.D. Ohio 2001), *Christy v. Ashkin*, 972 F. Supp. 253, 253 (D. Vt. 1997); *CEH, Inc. v. FV "Seafarer"*, 153 F.R.D. 491, 498 (D. R.I. 1994); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990).

The Court acknowledges that, under California law, a prima facie showing is required. California Civil Code § 3295 provides in part that

> [n]o pretrial discovery by the plaintiff shall be permitted with respect to the evidence [of a defendant's profits gained by virtue of its wrongdoing or its financial condition] unless the court enters an order

---

[1] While federal law is controlling on the matter of privilege, the Court can also, as a matter of comity, take into account relevant state law that pertains to Defendants' right to privacy. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932-33 (7th Cir. 2004) (noting that state privilege does not apply in federal court but that, as matter of comity, such privilege would be considered where no significant interference with federal proceeding). As Defendants point out, there is a right to privacy under Article I, Section I of the California Constitution. However, privacy under the California Constitution is "not an absolute right, but a right subject to the invasion depending upon the circumstances. Moreover, the courts have frequently found that a party's need for the information may outweigh whatever privacy rights, if any, another party may have." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998). In other words, state law also requires a balancing test in assessing when privacy rights can be invaded. *See Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994); *see also Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (2000) (listing the following factors used to balance privacy and disclosure needs: "the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information").
 Even taking into account state law on privacy, the Court still concludes that the interest in disclosure outweighs Defendants' privacy interests, especially as there will be a protective order in this case. *See Oakes*, 179 F.R.D. at 284 (noting that, while a party does have an interest in confidentiality of financial statements and net worth reports, this interest can be adequately addressed via a protective order).
 Plaintiffs note in passing that any privileges may have been waived by Defendants because they have not provided Plaintiffs with any privilege log. *See Burlington Northern & Santa Fe Railway Co. v. Kapsner*, No. 04-72134, 2005 U.S. App. LEXIS 5150, at *10 (9th Cir. Mar. 31, 2005). The Court need not address this argument as it concludes that the information on current net worth and financial condition should be produced pursuant to the above analysis.

United States District Court
For the Northern District of California

> permitting such discovery pursuant to this subdivision. . . . Upon motion by the plaintiff supported by appropriate affidavits . . . , the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the [punitive damages] claim.

Cal. Civ. Code § 3295(c); *see also Cobb v. Superior Court*, 99 Cal. App. 3d 543, 550 (1979) ("[T]he trial court should consider the advisability of requiring a prima facie showing into the right to punitive damages . . . .").

However, "discovery is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant."[2] *CEH*, 153 F.R.D. at 497-98; *see also Oakes*, 179 F.R.D. at 285 (finding that § 3295(c) "is clearly a procedural law"); 6-26 Moore's Fed. Practice -- Civ. § 26.41 (taking note of state statutes similar to § 3295 and commenting that "[i]t is doubtful that these types of provisions are binding on a federal court, even when its subject matter jurisdiction rests on diversity of citizenship").

Under federal law, "a district court has unquestioned authority to control the sequence of discovery." *Id.* This Court concludes that it is not appropriate to delay discovery on punitive damages because, as suggested by one court, such information is valuable to both parties in making a realistic appraisal of the case and may lead to settlement and avoid protracted litigation. *See Mid Continent*, 130 F.R.D. at 152; *cf. Matusoff*, 204 F.R.D. at 401 (noting that to delay discovery on net worth and financial condition until after liability had been established could put plaintiff in the position of "being required either to prove punitive damages to a different jury than the one which had found the Defendants liable, or to seek such damages from the same jury, after it had been away from the trial for a number of weeks (or months), while the parties conducted discovery on the financial condition of the Defendants").

---

[2] "While *Erie* questions arise most frequently in diversity cases, the Supreme Court has made clear that the doctrine applies equally to state law claims . . . that are brought to the federal courts through supplemental jurisdiction under 28 U.S.C. § 1367." *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002); *see also United Mine Workers v. Gibbs*, 383 U.S. 715; *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

3.   <u>Defendants Pisenti & Brinker and Mr. Rothenberg</u>

As noted above, Defendants Pisenti & Brinker and Mr. Rothenberg make a separate argument from the other Defendants as to punitive damages discovery. More specifically, they argue that they should not be compelled to provide any such discovery because they did not personally engage in any wrongdoing and thus there is no basis for finding liability for punitive damages. According to Pisenti & Brinker and Mr. Rothenberg, because they did not merge with Zenith Capital LLC's predecessor until 2001, they personally did not cause any wrong to Plaintiffs -- *i.e.*, they never provided investment advice to Plaintiffs, received any funds from Plaintiffs, or had any contact with Plaintiffs. However, the Court does not agree that there is no possibility that Pisenti & Brinker and Mr. Rothenberg did not engage in personal wrongdoing, thus precluding even discovery into punitive damages.

Under California law, liability can extend to individuals or entities in their personal capacities if they "specifically authorized, directed or participated in the allegedly tortious conduct; *or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm*." *Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 508-09 (1986) (emphasis added). According to Plaintiffs, Pisenti & Brinker and Mr. Rothenberg -- both listed as controlling persons in Zenith Capital LLC's registration with the NASD in January 2002, *see* Compl. ¶ 8; Pls.' Mot. at 4, Ex. 4 -- knew about the "secret kickbacks" but failed to take any action to protect Plaintiffs. *See* Compl. ¶¶ 17, 18; Pls.' Mot. at 5, Ex. 8 (highlighting an email that Mr. Rothenberg received denoting the nature of Zenith's disputed fee-based compensation from GMM). According to Plaintiff, the alleged "kickbacks" occurred well into 2003, long after Pisenti & Brinker and Mr. Rothenberg became involved with Zenith. Also, Pisenti & Brinker and Mr. Rothenberg allegedly knew but failed to tell Plaintiffs that a GMM operator had been disciplined multiple times by the NASD. *See* Compl. ¶ 20; Pls.' Mot. at 5, Ex. 7. Although potential exposure to personal liability as a result of *e.g.*, negligence does not necessarily establish exposure to punitive damages under Civil Code § 3294, the Court cannot make such a determination at this stage. The extent of culpability, if any, is likely to turn on facts. Unless and until a

6

determination that there is no such exposure is made by the trial judge herein, this Court is not in a position to preclude the possibility of punitive damages. Consequently, Plaintiffs are entitled to punitive damages discovery from Pisenti & Brinker and Mr. Rothenberg under the terms of the strict protective order described above.

B.  Income and Expense Reports

In addition to information on Defendants' net worth and financial condition, Plaintiffs also seek what they call income and expense reports from Defendants. Plaintiffs argue that this information is relevant to two issues: (1) control person under federal law and (2) alter ego under state law. The following reiterates the Court's comments at the hearing and shall inform the further meet and confer ordered.

1.  Control Person

Plaintiffs seek Defendants' income and expense reports to prove that the individual defendants, along with Pisenti & Brinker, are control persons of Zenith Capital LLC and/or its predecessors under federal securities law.

Title 15 U.S.C. § 78t(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Ninth Circuit has stated that

> [w]hether [defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions. Control is defined in the regulations as the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

*No. 84 Employer-Teamster v. Am. W. Holding*, 320 F.3d 920, 945 (9th Cir. 2003).

While, given Plaintiffs' allegations, who is a control person is a relevant matter, *see* Compl. ¶ 13; Pls.' Mot. at 8-9, Plaintiffs' document requests are overbroad and not specifically targeted to seeking information that would reflect whether the individual defendants and/or Pisenti & Brinker

are control persons. For example, although documents showing *e.g.*, the exercise of influence or decision-making power over Zenith may be relevant, it is not clear why income and expense reports of the individual defendants would be telling of their management or involvement in the day-to-day affairs of an entity. The parties should further meet and confer to determine if they can reach agreement on a narrowed request for documents relevant to the issue of control person.

2.   <u>Alter Ego</u>

Plaintiffs also seek Defendants' income and expense reports to prove that the entity defendants are the alter ego of the individual defendants, along with Pisenti & Brinker, under state law. Pursuant to the alter ego doctrine, when a corporation is the mere instrumentality or shell of another corporation or person, a court will disregard the corporate entity and hold the "underlying" corporations or individuals responsible for their acts knowingly and intentionally done in the name of the corporation. *See* Fletcher Cyclopedia of Private Corp. § 41.10. To prove that an entity is an alter ego under California law, two requirements must be met: (1) there must "be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," *and* (2) "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985); *see also McLouglin v. L. Bloom Sons Co.*, 206 Cal. App. 2d 848, 851 (1962) (finding the same two requirements when the entity sought to be held liable is another corporation instead of an individual).

For the first requirement, courts have considered the following factors: (1) commingling of funds and other assets; (2) failure to segregate funds of the separate entities; (3) the unauthorized diversion of corporate funds or assets to other than corporate uses; (4) the total absence of corporate assets; (5) the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; (6) concealment of personal business activities; (7) the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of the creditors; (8) the manipulation of assets and liabilities between entities so as to concentrate te assets in one and the liabilities in another; and (9) the use of a corporation as a subterfuge of illegal transactions. *See Assoc. Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-840 (1962).

Given Plaintiffs' allegations, there is reason to pursue discovery relevant to the issue of alter ego. *See* Compl ¶ 13, Pls.' Mot. at 9-10. Again, however, the document requests as they currently stand are overbroad. Although documents of financial transactions or exchange of value between Zenith and individual Defendants may be relevant to *e.g.*, co-mingling of funds, it is unclear how income and expense of Pisenti & Brinker and Mr. Rothenberg, as a general matter, are relevant to Plaintiffs' alter ego claim. The parties should further meet and confer to determine if they can reach agreement on a narrowed request for documents relevant to the issue of alter ego.

### III.  CONCLUSION

The Court therefore orders as follows:

1. Defendants, including Pisenti & Brinker and Mr. Rothenberg, shall produce to Plaintiffs documents sufficient to establish their net worth and financial condition from 2004 to present. Defendants shall complete their production no later than 21 days from this Order. The documents should be produced subject to a protective order as described herein.

2. The parties shall further meet and confer regarding documents relevant to the issues of control person and alter ego. The requests should be narrowed both in terms of subject matter and time.

3. As discussed at the hearing on Plaintiffs' motion to compel, to the extent that Plaintiffs seek financial information from Defendants to track down where Plaintiffs' money went, the Court notes that Plaintiffs are entitled to such information but that such information should be narrowed, *e.g.*, to documents that reflect monetary exchanges between GMM and Defendants, between the entity defendants, and between the entity and individual defendants.

IT IS SO ORDERED.

Dated: May 3, 2005

/s/
EDWARD M. CHEN
United States Magistrate Judge

9